ISAAC DOUGHTEN v. CITY OF CAMDEN.

Argued June 8, 1904—Decided November 7, 1904.

1.  The charge of seventy-five cents per foot of frontage which, by
    the act of March 9th, 1871, enabling the city of Camden to supply
    its citizens with water, is made a lien upon land bordering on
    streets through which water pipes are laid, for the purpose of
    meeting the expense of laying the pipes, is valid, at least with
    regard to the property of owners who accept the supply of water.
2.  If the city lay new pipes in place of old ones, worn out, which had
    been laid by a water company, the city's predecessor, such laying
    is within the meaning of that provision of said act.
3.  Owners of property in front of which water pipes were laid with-
    out objection from them, will not be heard to complain of mere
    informalities in regard to the ordering of the work.

On *certiorari*.

Before Justices DIXON and HENDRICKSON.

For the prosecutor, *Schuyler C. Woodhull* and *Herbert A.
Drake*.

For the defendant, *Edwin G. C. Bleakly*.

In consequence of illness Justice Hendrickson has been pre-
vented from taking part in the decision, and the case is there-
fore decided on the opinion of

DIXON, J. The main question presented in this case and
the cases submitted with it is whether the city of Camden,
on laying pipes for supplying water in a street of the city
is entitled to a lien on the land fronting upon either side of
the street for the amount of seventy-five cents per foot of
frontage to meet the expense thereof. The act of March 9th,
1871 (*Pamph. L., p.* 415), "to enable the city of Camden to
supply the citizens thereof and the inhabitants of the town of
Pavonia, in the township of Stockton, with water," attempts
to confer on the city the right to such a lien, and hence the

constitutionality of that provision seems to be the first point for consideration.

Long ago it was settled by our Court of Last Resort as a general proposition that the cost of a public improvement could be imposed on particularized property only to the extent to which such property was exceptionally benefited. *Agens* v. *Newark,* 8 *Vroom* 415. But a distinction was then noticed between improvements which are primarily for the public welfare and only incidentally for the benefit of the landowner and those of which the converse is true. While with respect to the first class the proposition just stated must be rigidly applied, with respect to the second class the rule is not imperative and the legislature may charge the actual cost on the private property to which the chief advantage accrues, even though the benefit be not an exact equivalent. Of this latter class are sidewalks and curbs, the gutters of unpaved streets and the house connections of sewers, which are deemed appendages to the adjoining land. *Sigler* v. *Fuller,* 5 *Vroom* 227; *Kirkpatrick* v. *Commissioners,* 13 *Id.* 510; *Robins* v. *New Brunswick,* 15 *Id.* 116; *Van Wagoner* v. *Paterson,* 38 *Id.* 455.

On behalf of the city it is urged that water pipes, laid in urban streets for the common use of the neighboring inhabitants, have the characteristics of this second class. This position seems to me well supported, at least with regard to those landowners who avail themselves of the conveniences provided.

The principal object of these appliances is to furnish water for domestic and business purposes on the adjacent private property, and the value of such a provision is ordinarily greater than that which an improved sidewalk would afford to the property. On the other hand, the essentially public use of a water-supply is but small in comparison with the private utility and is less than the public use of an improved sidewalk. Hence, if sidewalks and their appurtenances are legally regarded as primarily for private benefit and only incidentally for public welfare, I see no reason why water pipes, laid in the streets of our municipalities, should not be viewed

in the same light. Indeed, this idea of paramount private utility is emphasized in the very statute now under consideration, the title of which designates "citizens" and "inhabitants" as the beneficiaries of the legislative scheme. Consequently, the principle which justifies the legislature in charging against adjoining property the expense of constructing sidewalks will warrant a similar imposition for the laying of water pipes.

There are, however, in this state two cases which may be thought to have a contrary bearing (*Vreeland* v. *Jersey City,* 14 *Vroom* 135; *S. C., Id.* 638; *Culver* v. *Jersey City,* 16 *Id.* 256), where it was held that a fixed annual charge, levied upon land bordering on streets through which water pipes were laid but not using any water, was unconstitutional as a general tax, because not graduated by the value of the land, and as a special assessment because not graduated by the benefit conferred. But those cases differ from that in hand—*first,* because the legislature had not attempted to confer on Jersey City authority to charge against the land the expense of laying water pipe in front of it; and *second,* because the city had not fixed the charge to meet such expense. Conditions corresponding to these are necessary to justify such an imposition as that now under consideration.

There is another view that may be taken leading to the same result.

As already noticed, the statute enabling the city to furnish a water-supply directed that for the expense of laying pipes through the streets seventy-five cents per foot front should be paid by the owners of adjoining land and should be a lien on the land until payment. Owners who accepted the benefits of the water-supply thus provided should be deemed to have assented to the burdens accompanying it and thus, even though this assessment could not be imposed on those not receiving the water, it might be legally levied on the property for which the owners did appropriate the supply. The testimony shows that in all of the lots now in question the city water had been taken by the owners not only through the

pipes for which this charge is made but also through those for which these have been substituted.

Another objection urged against this charge is that this was not an original laying of pipes in these streets, and only for such an original work is the statutory authority available. The evidence shows that water pipes were first laid in these streets prior to 1870 by the Camden Water Works Company; that under authority of an act passed March 14th, 1870 (*Pamph. L., p.* 539), the city purchased the plant of that company, and that those old pipes being worn out, the new ones were laid in place thereof. I think this substitution was within the meaning of the statute. If even an original laying only was intended, this was an original laying by the city.

Another objection urged is that these pipes were laid without due authority. It appears that under an ordinance, approved December 30th, 1886, the control and regulation of the water works of the city are vested in a committee of the council, and this committee is empowered to contract for material and labor for the current use of said works in making such repairs and alterations as may be requisite to keep the works in all parts in serviceable condition; that in the year 1893 the city made a special emergency appropriation of $10,000 for the laying of water pipes; that the water committee ordered the city engineer to take up the old pipes in front of the prosecutor's lots, because those pipes had become rusty, clogged, leaky and very fragile, and to lay new pipes in place thereof; that this was done under the supervision of the city engineer, and the whole matter was reported to the city council, and was approved by it, and the expense of the work was paid out of the emergency fund mentioned. I think the authorization thus shown was sufficient, and even if it was informal, the quiescence of the prosecutor until the work was complete bars his complaint in this respect.

In my judgment the reasons presented for annulling the assessment are insufficient, and therefore the assessment is affirmed.